UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA COWLEY,

          Plaintiff,

v.

PRUDENTIAL SECURITY, INC.
et al.,

          Defendants.

Case No. 2:21-cv-12226

HONORABLE STEPHEN J. MURPHY, III

/

**OPINION AND ORDER**
**GRANTING MOTION FOR CONDITIONAL CERTIFICATION [10]**

Plaintiff Joshua Cowley filed the present putative collective action against Defendants Prudential Security, Greg Wier, and Matthew Keywell under the Fair Labor Standards Act ("FLSA") and California law. ECF 1. Shortly after Plaintiff filed the complaint, ECF 1, he moved for conditional certification under 29 U.S.C. § 216(b) of the FLSA, ECF 10. The parties briefed the motion. ECF 18; 21.[1] For the reasons below, the Court will grant the motion for conditional certification.

**BACKGROUND**

Plaintiff was a former security guard for Defendant Prudential at its California City, California location. ECF 1, PgID 2–3. As a security guard, Plaintiff typically worked forty-eight hours a week and earned hourly wages. ECF 10-21, PgID 320; *see also* ECF 1, PgID 8 ("Plaintiff and putative Collective and Class Members typically

---

[1] Based on the parties' briefing, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

1

work shifts in excess of eight hours a day, and at least four or five days per week."). Plaintiff alleged that during his employment he and other security guard employees nationwide had "to perform work off-the-clock without compensation" that violated the FLSA. ECF 1, PgID 4, 8. According to Plaintiff, "[Prudential] has a common practice of instructing security guard workers to arrive early, before their scheduled start times," and "are instructed to stay after[]" their shift ends "to perform services for [Prudential]." ECF 10, PgID 118; *e.g.*, ECF 10-21, PgID 320. Yet that work is performed off-the-clock and without pay. ECF 10, PgID 118; *e.g.*, ECF 10-21, PgID 320.

Plaintiff further alleged that "Defendant does not permit security guards to take [an uninterrupted] meal period." ECF 10, PgID 119–20. But the security guard employees are neither "paid for time spent working through [their] meal breaks," nor are they "compensated with one hour of premium pay for each workday that [their] meal periods [are] not provided." ECF 10-21, PgID 322; *e.g.*, 10-22, PgID 329.

Plaintiff ultimately sued Defendant Prudential (along with its President, Greg Wier, and its Chief Financial Officer, Matthew Keywell, ECF 1, PgID 5–6), on behalf of himself and a proposed collective for all unpaid wages. *Id.* at 40. He defined the collective as "[a]ll current and former non-exempt, hourly security guards of Defendant Prudential Security, Inc. throughout the United States during the time period from three years prior to the filing of the complaint until resolution of this action." ECF 10, PgID 112.

## LEGAL STANDARD

Under the FLSA, employees may collectively sue their employers to recover unpaid wages. 29 U.S.C. § 216(b). "Section 216(b) establishes two requirements for a representative action: (1) the plaintiffs must actually be 'similarly situated,' and (2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (quoting § 216(b) and citing *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 167–68 (1989)). An FLSA collective action "is distinguished from the opt-out approach utilized in class actions under" Federal Rule of Civil Procedure 23 because potential collective plaintiffs must "opt into the suit." *Id.* (internal quotation marks removed).

"Courts within the Sixth Circuit generally apply a two-step procedure for determining whether an FLSA case should proceed as a collective action." *Knecht v. C & W Fac. Servs., Inc.*, 534 F. Supp. 3d 870, 873 (S.D. Ohio 2021) (citation omitted). At step one, "certification is conditional 'and by no means final.'" *King v. Nat'l Pro. Staffing, LLC*, No. 20-10400, 2021 WL 5883233, at *4 (E.D. Mich. Dec. 13, 2021) (quoting *Comer*, 454 F.3d at 546). At step two, "following discovery," the Court "examine[s] more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547. The Court "employs a stricter standard" at the second stage because it "has much more information on which to base its decision." *Id.* (quotation omitted).

Plaintiff bears the burden, at the first step, to "show[] that the employees in the proposed class are 'similarly situated.'" *Knecht*, 534 F. Supp. 3d at 873 (quotation

3

omitted). Employees in a proposed collective are similarly situated when evidence shows that Plaintiff "and potential opt-in plaintiffs suffer from a single, FLSA-violating policy[] and . . . that their claims are unified by common theories of defendant's statutory violations." *Loomis v. Unum Grp. Corp.*, 539 F. Supp. 3d 898, 906–07 (E.D. Tenn. 2021) (cleaned up). Plaintiff satisfies his burden "even if the proofs of these theories are inevitably individualized and distinct." *Id.* at 907 (quotation omitted). At bottom, the showing at step one is only "a modest factual showing," and the Court must employ a "fairly lenient" standard that "typically results in conditional certification of a representative class." *Comer*, 454 F.3d at 547 (cleaned up).

## DISCUSSION

The Court will first explain why Plaintiff has met his "modest burden of showing that [he] is similarly situated" to the individuals of the proposed collective such that conditional certification is proper. *King*, 2021 WL 5883233, at *5. After, the Court will address Plaintiff's proposed notice and opt-in form.

I.  Conditional Certification

To start, the Court will detail the evidence offered by each party. The Court will then examine the evidence under the "fairly lenient" standard to assess whether the proposed collective is similarly situated to Plaintiff. *Comer*, 454 F.3d at 547.

4

### A. *Plaintiff's Evidence*

Plaintiff offered twelve declarations[2] from individuals who were employed by Prudential in locations across the country and whose employment spanned from 2010 until 2020. ECF 10, PgID 120; ECF 10-1, PgID 148; ECF 10-23, PgID 333; ECF 10-29, PgID 369. "To warrant a finding that similarly situated employees exist, a plaintiff's declaration must at least allege facts sufficient to support an inference that [he] has actual knowledge about other employees' job duties, hours worked, and whether they were paid for overtime hours." *Holder v. A&L Home Care & Training Ctr., LLC*, 552 F. Supp. 3d 731, 739 (S.D. Ohio 2021) (cleaned up).

In the declarations, the former employees explained that they were "classified as [] non-exempt employee[s]" under the FLSA and that they were "paid on an hourly basis." ECF 10-21, PgID 320; *e.g.*, ECF 10-22, PgID 327. The former employees also detailed their primary job duties as security guards at various facility locations.[3] *E.g.*, ECF 10-21, PgID 320; ECF 10-22, PgID 327. Their duties generally included controlling entry to the facility, checking the facility perimeter, and keeping track of persons and vehicles entering and exiting the facility. *E.g.*, ECF 10-21, PgID 320; ECF 10-22, PgID 327. Because each facility varied in layout and security need, all

---

[2] All twelve declarations mirror each other in both form and content. *See* ECF 10-21–10–32. To avoid redundancy, the Court will cite only the first two declarations.

[3] "Plaintiff provided on-site security guard services for [Prudential's] customers." ECF 1, PgID 3; *e.g.*, ECF 10, PgID 116; ECF 18-2, PgID 556. For instance, Plaintiff worked as a security guard for Prudential at a Hyundai Testing Facility in California. ECF 10-21, PgID 320.

5

security guard job duties differed slightly. ECF 18-2, PgID 556; *e.g.*, ECF 10-21, PgID 320; ECF 10-22, PgID 327.

The former employees claimed that while they worked their security shifts, they had to perform "off-the-clock work," and that they were not provided "uninterrupted meal period[s] free from work duties." ECF 10-21, PgID 320–23; *e.g.*, ECF 10-22, PgID 327–29. For example, Plaintiff "was required to arrive 20 to 30 minutes before the start of [his] shift because the acting captain . . . mandated that [they] report to work early to coordinate the hand-off from the previous on-duty security guard." ECF 10-21, PgID 320. Yet the security guards were "only allowed to clock in at the exact starting time of [their] shift[s]." *Id.* And after their shifts, the security guards claimed that they routinely worked off the clock if they were asked to stay late until a relieving guard arrived. *E.g.*, ECF 10-21, PgID 321; ECF 10-22, PgID 328. All told, the security guards asserted that Prudential paid them based on inaccurate timesheets because they did not receive overtime pay for the routine, off-the-clock work. *E.g.*, ECF 10-21, PgID 321–22; ECF 10-22, PgID 328.

What is more, the former employees stated that they had received calls and text messages to their personal phones while off duty. *E.g.*, ECF 10-21, PgID 321; ECF 10-22, PgID 328. Prudential did not compensate the security guards for time spent reviewing and responding to the messages. *E.g.*, ECF 10-21, PgID 321; ECF 10-22, PgID 328. And Prudential did not reimburse the security guards "for the usage of [their] personal cellphone[s] for work-related duties." ECF 10-21, PgID 321; *e.g.*, ECF 10-22, PgID 328.

Last, the former employees reported that they were "unable to take meal breaks during the entirety of [their] employment with Prudential." ECF 10-21, PgID 322; *e.g.*, ECF 10-22, PgID 328. The employees were "not compensated with one hour of premium pay for each workday that [the] meal periods were not provided," and they were "unable to take an uninterrupted, [thirty]-minute lunch break," despite working full-day shifts. ECF 10-21, PgID 322; *e.g.*, ECF 10-22, PgID 328. Indeed, the employees would have been reprimanded if they had left their posts. *E.g.*, ECF 10-21, PgID 322–23; ECF 10-22, PgID 328–29.

B.   *Defendants' Evidence*

Defendants offered Defendant Wier's declaration, the Prudential Security Employee Manual, Plaintiff's Employee Acknowledgment form, and an example New Hire Exam. ECF 18-2; 18-3 18-4; 18-5. In the declaration, Defendant Wier noted that Prudential operates across twelve states, and upon hire, each security guard completes an orientation process. ECF 18-2, PgID 556–57. Each security guard must then pass a "New Hire Exam" that is taken after orientation. *Id.* at 557. One exam answer provides that security guards must "submit a payroll correction sheet" "[i]f there is a problem with [their] paycheck." *Id.*; ECF 18-5, PgID 571 (New Hire Exam). Defendant Wier also explained that Prudential's overtime policy requires it "to pay employees for all time worked, including supervisor approved overtime and for time when employees work through breaks." ECF 18-2, PgID 557; ECF 18-3, PgID 564–65 (Employee Manual). And Defendant Wier claimed that Prudential "does not train its

7

managers or supervisors to encourage or require employees to perform off-the-clock work or to work through meal periods without compensation." ECF 18-2, PgID 558.

The Employee Manual provides that "[a]ccurately recording time worked is the responsibility of every employee." ECF 18-3, PgID 564. To that end, "[e]ach employee is expected to fill out a time card each shift that accurately reflects the hours worked." *Id.* If an employee wishes to correct his time record, the amendment "must be approved by his[] supervisor." *Id.* The Manual also explains that any "overtime work performed by an hourly employee must receive the supervisor's prior authorization." *Id.* Employees who fail to receive prior authorization are subject to "disciplinary action." *Id.* at 564–65.

Plaintiff signed a "Verification of Receipt," that acknowledged he had "received, read, under[stood,] and agree[d] to comply with the terms of the Employee [Manual]." ECF 18-4, PgID 567. Last, Defendant Wier noted that Prudential "has no record of [Plaintiff], or any of the other declarants, ever utilizing Prudential's payroll correction procedures." ECF 18-2, PgID 558.

C. *Similarly Situated Plaintiffs*

Plaintiff has shown that the employees in the proposed collective are similarly situated and has presented evidence of a "common policy or plan that violated the law." *Fisher v. Mich. Bell Tel. Co.*, 665 F. Supp. 2d 819, 825 (E.D. Mich. 2009) (quotation omitted).

8

Defendants lodged two arguments against certification: (1) Plaintiff cannot show a "single decision, policy, or plan" of Prudential that violates the FLSA; and (2) Plaintiff is not similarly situated to the proposed collective. ECF 18, PgID 534–42. But the arguments do not weigh against certification.

At the conditional certification stage, "court[s] should not weigh the merits of the underlying claims." *Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1076 (M.D. Tenn. 2015) (collecting cases); *see Loomis*, 539 F. Supp. 3d at 905 (citations omitted). "Rather, such a decision should be made at the second stage, 'following discovery, [where] trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated.'" *Loomis*, 539 F. Supp. 3d at 906 (alteration in original) (quoting *Comer*, 454 F.3d at 547). Thus, Defendants' substantive arguments are premature at the conditional certification stage. *See* ECF 18, PgID 534–35; *Bradford*, 137 F. Supp. 3d at 1075 ("[Defendant's] substantive arguments against certification that are based upon the merits of the plaintiffs' FLSA case are premature.").

Defendants cited four out-of-circuit cases to support their argument that there was no wrongful, company-wide policy that violated the FLSA. ECF 18, PgID 534–35 (citing federal district court cases from Pennsylvania, Wisconsin, and Minnesota). Those cases lack persuasive value given their factual differences and the kind of evidence offered by the litigants. *E.g.*, *Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 939 (D. Minn. 2009) (defendant offering direct contradictory evidence). And one of the cases is an order denying certification at step two, rather than conditional

9

certification at step one. *Lugo v. Farmer's Pride Inc.*, 737 F. Supp. 2d 291, 300 (E.D. Penn. 2010). As for the single in-circuit district court case offered, that order opted to "not follow[] the common two-stage certification process," and the parties had engaged in two months of discovery. *Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957, 960 (W.D. Mich. 2009). Thus, the order used a more rigorous standard to deny certification (rather than merely conditionally grant certification), and the order "base[d] its certification determination on the evidence rather than the pleadings." *Id.* In sum, the cases Defendants rely on are not persuasive to the Court on the present issue. Besides, "[w]hile evidence of a widespread scheme, plan, or common experience may be sufficient to demonstrate employees are similarly situated, 'showing a unified policy of violations is not required.'" *Potter v. Dawn Food Prods., Inc.*, No. 20-10926, 2020 WL 6882908, at *3 (E.D. Mich. Nov. 24, 2020) (alteration added and omitted) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 586 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016)).

Next, Defendants argued that all the factors courts typically consider when they analyze whether employees are similarly situated cut against conditional certification. ECF 18, PgID 536 (citing *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017)). Those "non-exhaustive factors" are "(1) the factual and employment setting of the" employees, "(2) the different defenses to which the employees may be subject to an on individual basis," "and (3) the degree of fairness and procedural impact of certifying the collective action." *Id.* (cleaned up).

10

Based on the Court's research, however, the three-factor test developed in *O'Brien* and reiterated in *Monroe* is more appropriately applied at the second step of collective certification. In both cases, the Sixth Circuit reviewed challenges to the certification of the case as a collective action. *Monroe*, 860 F.3d at 396–97, 402; *O'Brien*, 575 F.3d at 573, 583. In other words, *conditional* certification was not reviewed. The *O'Brien* court even hedged the three factors by explaining that "district courts have based their *final-certification decisions* on a variety of factors." 757 F.3d at 584 (emphasis added). And given that analyzing the *O'Brien* factors is necessarily fact-intensive, it follows that the Court would view the factors in light of the facts revealed during discovery, at step two.

The present case sits at step one, and the Court must base its conditional certification decision on pre-discovery facts. Thus, Plaintiff need only make a "modest factual showing" to meet his conditional certification burden. *Comer*, 454 F.3d at 547.

Plaintiff has met his modest burden and then some. Plaintiff offered twelve declarations from former Prudential employees in locations across the country from 2010 until 2020. ECF 10, PgID 120; ECF 10-1, PgID 148. Each former employee, regardless of location and year, performed "off-the-clock" tasks before and after their shifts on a regular basis. ECF 10-21, PgID 322. Each former employee, regardless of location and year, did not receive overtime pay for the "off-the-clock" work. *Id*. Each former employee, regardless of location and year, was "unable to take an uninterrupted, [thirty]-minute lunch break." *Id*. Each former employee, regardless of location and year, was not "paid for time spent working through [their] meal breaks."

11

*Id.* Each former employee, regardless of location and year, was neither "paid for, nor [] reimbursed for the usage of [their] personal cellphone for work-related duties." *Id.*

In full, the declarations show that the employees in the proposed collective are similarly situated: the "potential opt-in plaintiffs suffer[ed] from a single, FLSA-violating policy, and . . . their claims are unified by common theories of [D]efendant's statutory violations." *Loomis*, 539 F. Supp. 3d at 906–07 (quotation omitted). Plaintiff has met his low burden, *Comer*, 454 F.3d at 547, and the Court will grant conditional certification.

II.     Proposed Notice and Opt-In Form

Because the Court has granted conditional certification, the Court must approve Plaintiff's proposed notice and opt-in form. *Holder*, 552 F. Supp. 3d at 738 ("If plausible grounds exist and [the C]ourt grants conditional certification, then the plaintiffs may send opt-in notices to current and former employees who potentially satisfy the definition of the collective.") (citation omitted); *see also Fisher*, 665 F. Supp. 2d at 828–29 (explaining that judicial notice is appropriate to promote judicial economy and to inform potential plaintiffs that they may opt-in before the FLSA limitations period ends).

Plaintiff's proposed notice extends to "[a]ll current and former non-exempt, hourly security guards of Defendant Prudential Security, Inc. throughout the United States during the time period from three years prior to the filing of the complaint until resolution of this action." ECF 10-18, PgID 311. (Proposed Opt-In Consent Form). The parties disagreed on several aspects of the proposed notice, but they

12

agreed to meet and confer so that they may submit a jointly proposed notice plan. *See* ECF 18, PgID 543–51; ECF 21, PgID 804. The Court will resolve most of the disputes and will grant the parties' request to meet and confer to resolve the remaining issues.

First, the Court will deny Plaintiff's request for the social security numbers of potential opt-in plaintiffs. ECF 10, PgID 134. Plaintiff can sufficiently provide notice to the potential opt-in plaintiffs if given the names, last-known mailing addresses, and email addresses of all current and former hourly security guards within the three-year scope. *See Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 215 (S.D. Ohio 2011) (finding that the form of notice must balance the interest of ensuring potential plaintiffs receive notice with "appropriately safeguard[ing] the privacy of individuals not currently a party to the case").

The Court will allow Plaintiff to send opt-in notices by mail and email, but not by text message. In the modern era, most communication is electronic, and in the Court's experience, it is not uncommon for FLSA notices to be sent electronically. *See, e.g., Anderson v. Minacs Grp. (USA) Inc.*, No. 16-13942, 2017 WL 1856276, at *9 (E.D. Mich. May 9, 2017) (noting that there is a "trend toward greater use of email . . . for most types of communications"). But Plaintiff did "not explain[] the need for [telephone numbers]," and the mail and email notices will sufficiently provide notice to potential opt-in plaintiffs. *King*, 2021 WL 5883233, at *7. Thus, Defendants need only produce the proposed collective members' last-known mailing and email addresses.

Plaintiff also requested that the Court require Defendants "to post a copy of the [n]otice in appropriate, conspicuous, visible, and accessible places at each of its locations in which putative Collective Members currently work." ECF 10, PgID 135. The request is excessive and burdensome. For one, the employees work at third-party facilities, and the Court will not require Defendants to make the posting on property that it neither owns nor controls. For another, the potential opt-in plaintiffs will be contacted by mail and email, and courts (including this Court) have routinely found that method to be sufficient to provide notice. *See, e.g.*, *McKinstry v. Developmental Essential Servs., Inc.*, No. 2:16-cv-12565, 2017 WL 815666, at *3 (E.D. Mich. Mar. 2, 2017) (Murphy, J.) ("[T]he Court will . . . not require Defendants to post the Notice in a location where it can be seen by current workers. That requirement is unnecessary and punitive given the other channels of notice available."). The Court will therefore deny the request to physically post the notice.

Defendants also argued that the Court should shorten the opt-in period to sixty days. But courts within the Sixth Circuit routinely accept the ninety-day opt-in period. *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1075–76 (S.D. Ohio 2016) (collecting cases). The Court will likewise accept the ninety-day opt-in period.

Last, Defendants claimed that compiling personnel contact information in a digital form "would be unduly burdensome" in the fourteen-day time frame requested by Plaintiff. ECF 18, PgID 544. Because the Court will afford the parties more than a month to meet and confer about the rest of the proposed opt-in notice, Defendants may use the extra weeks to compile the personnel contact information. Defendants

14

must produce to Plaintiff's counsel[4] the names and last-known mailing and email addresses in a computer-readable database (like a spreadsheet) no later than seven days after the parties submit to the Court a proposed mutually agreeable notice.

The Court is confident that the parties can resolve the remaining aspects of the opt-in notice when they meet and confer. The parties must confer and submit a proposed opt-in notice to the Court no later than June 20, 2022.

## CONCLUSION

In sum, the Court will grant conditional certification and will grant the parties time to meet and confer to submit a mutually agreeable proposed opt-in notice no later than June 20, 2022. The proposed opt-in notice must adhere to the following conditions consistent with this opinion and order:

- Defendants must provide Plaintiff's counsel, in a computer-readable database, the contact information necessary to ensure delivery of notice, including each individual's (1) name, (2) last-known mailing address, and (3) last-known email address.
- Defendants need not produce telephone numbers or social security numbers of any potential opt-in plaintiff.
- Defendants must produce to Plaintiff the personnel information no later than seven days after the parties submit to the Court a proposed mutually agreeable notice.
- Defendants need not post a copy of the notice at the facilities where potential opt-in plaintiffs currently work.
- Plaintiff may include a ninety-day opt-in period.

---

[4] Plaintiff noted that "a third-party notice administrator will [send] the Court-approved Notice . . . to proposed [c]ollective members," and "will create and maintain an official case website that allows for online submission of the opt-in form." ECF 10, PgID 134–35. Defendants did not appear to dispute the use of a third-party administrator, and the Court will allow Plaintiff to use one after it receives the personnel information from Defendants.

15

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that the motion for conditional certification [10] is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties must **MEET AND CONFER** and **SUBMIT** a mutually agreeable proposed opt-in notice **no later than June 20, 2022**. The proposed opt-in notice must **ADHERE** to the conditions set forth in this opinion and order.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: May 18, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 18, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager